Martin, J.
delivered the opinion of court. The petition charges that the defendarit having arrested the plaintiff’s runaway slave, instead of pursuing the means which the law directs, in order to secure him, kept him at ‘ on his own plantation for fourteen or fifteen days; after which the slave escaped, and has never been beard of since. There was judgment for the defendant, and the plaintiff appealed.
From the statement of facts, which consists of the depositions of a number of witnesses ; it appears that the defendant arrested the plaintiff’s slave on a Sunday, secured him in strong iron fetters and informed the plaintiff of the capture, proposing to purchase the slave. He also procured a gentleman of the rieighboihood *372 to address the plaintiff on the same subject. Both letters reached the plaintiff, who immediately.addressed the gentleman who had written, at the defendant’s request, inclosing a small sum to defray the expenses of the captare, and requesting him to inform the defendant that he might have the negro for; a price which was then fixed. In the mean time, during the night between the Thursday and Friday following the slave’s arrest, he effected his escape.
In the letter of the plaintiff to his friend, desiring him to offer the slave for sale to the defendant, he requested that, if the offer was not accepted, the slave might be taken to a blacksmith, put in strong irons, and kept till am opportunity to send him to New-Orleans presented itself; but, if none could be had shortly, that he might be sent to jail.
The fetters put on him, by the defendant, are sworn to have been very strong, and in the opinion of the witnesses such as precluded the idea of.his escape. The defendant, it appears, treats thus the negroes vvhom he arrests, and makes no charge against the owners.
The plaintiff relies on the act of 1816, 8 Martin’s Digest, 514, n. 6. which provides that whenever a slave shall be apprehended, ⅛ shall be taken before the parish judge or the *373 next íustice of the peace, who shall make . . . _ ■quiry-as to his name, ami that ot his owner, and send him to jail, &c. He contends that, as tiie defendant did not comply with the requisites of the law, he must be liable for the consequences.
On the part of the defendant, it is insisted that the positive charge in the petition, viz. that the slave was kept at work for the defendant is disproven, and the implied charge of a neglect to comply with the requisites of the act cited, is not presented as a substantial cause of action, wnich the defendant was bound to disprove,1
We are of opinion that the petition charges the neglect of the defendant, in a manner suffi ciently positive to put him on his defence.
The act requires a person who takes up a runaway slave to carry him before a magistrate, but it does not fix any particular time for doing so. The taker up cannot be expected instantly to abandon his own work and go accompanied by his own negroes to the justice. A reasonable time must be allowed for that purpose. And this is a matter of fact. If he has business of bis owu pressing on him, which does not adlfnit of a delay, he may secure the runaway during a reasonable timé. If the owner resides nearer *374 him than theAustice, lie may well send hi ta J J word to come and take bis slave away. If the latter escape in the mean while, it is not clear - ' that the taker up is to bear the loss. JSTemini debet swum officium esse nodosum. Taking up á runaway slave is generally a kindly office. No private man is bound to undertake it. It is true the law provides a compensation, but few1 persons demaud or accept it, an^the defendau# appears to be one of those.
The law of this case is pretty plain, and the jury who passed on it had but two facis to consider. Did the defendant neglect to carry the slave to a magistrate, for too long a time ? Did not the plaintiff approve of the slave being kept as he was ?
They have found for the defendant generality ; and we are far from seeing that they erred.
This is certainly a very hard action, and every allowance must be made, in favor of the defendant, who acted with the best intentions, ' ' desirous of avoiding any useless expense to the plaintiff, and who treated the slave in tire very manner in which the plaintiff desired he might be treated, if the defen I ant did not’ purchase him. The jury? who knew the situation of the defendant, his distance from the next magis-tral, and nis ability to spare hands to guard *375 the slave on the « ay, have said the plaintiff ought not to recover. , : ⅛ <•
Price for the plaintiff, Enstis for the defendant.. . .,A
The plaintiff in two letters, before and after he héard of the escape of the slave, does not ap-péar to have disapproved — did not complain of the conduct of the defendant. On the contrary, he used expressions therein, which might be construed into an approbation of his conduct ; and if the verdict was grounded on a belief that it was approved and ratified by the plaintiff, we cannot say that the jury erred.
Upon the whole, the verdict and judgment appear to us correct.
It is, therefore, ordered, adjudged and de- ⅝ creed that the judgment of the district court bo affirmed with costs.