Martin, J.
delivered the opinion of the court. The plaintiff obtained an order of seizure and sale of a tract of land surrendered by the insolvent. J. Tricou and Bouligny, became the last bidders and purchasers of it. The land being claimed by a third person, and the insolvent's title appearing doubtful, they refused payment of their bid, and the plaintiff obtained an alias order of sale or ven. exp. on which the sheriff returned, that the bidders having paid the price at which the land had been struck to them, he had suspended the sale, till the further order of the court.
The bidders then obtained a rule, against the plaintiff, to shew cause why the alias order of sale or ven. exp. should not be set aside, and on argument the rule was discharged. The plaintiff then obtained a rule on the sheriff, to shew cause why he did not proceed to sell ; which on argument was made absolute and a pluries order of sale issued.
*221 East’n District.
June, 1820.
Whereupon the bidders appealed.
Their counsel contends that by the adjudication, the sale became complete and absolute, the property of the land was vested in them, and could not be divested without some act of theirs, and they could at any time prevent the sale of it, by paying the amount of their bid.
He relies on Cur. Phil. Remate, § 22, n. 26. “ What is sold, at public auction, passes by an indissoluble and efficacious contract, from which the parties cannot retract, as says Dr. Salgrado : the proof of this is that the bidder can be coerced to pay, by the capture of his body.”
This is certainly true : but the obligations which arise from the contract of sale, like all others, may be dissolved by the concurrent wills of the vendor and vendee. Here, the bidders positively declared their unwillness, to comply with their bid and pay the money, and persisted in it from the 11th of August, to the 2d January. By suing out an alias order of sale, the plaintiff unequivocally declared his intention that the bid might be considerad as nothing, and if the concurrence of the sheriff was necessary, he gave it by advertising the land for sale a second time.
We understand the author of the Curia to *222 mean, that the sale is not dissoluble by the act of either party alone, and the concurrent wills of the parties are sufficient to put an end thereto.
It is true, a bidder, at a sheriff sale, according to the Curia, is coercible by the imprisonment of his body, but that is only a cumulative remedy. The property, in the land sold by the sheriff, has never been determined to pass by the sheriff’s return, especially when like the present it shows the bidder’s failure to pay. The law requires the sheriff to make out and deliver a deed of sale to the buyer and this is the period at which the property passes ; till then the conveyance is only inchoate.
The sheriff on a fi fa is commanded to make the money, by the sale of the defendant’s property, he puts it up for sale, bidders present themselves, and the property is struck to the one who offers the highest price. Now, if the latter wishes to avail himself of the bargain, he must pay : if he refuses, the sheriff may certainly go on and disregard the bid, though the law may have provided a summary remedy, if it be thought proper to resort thereto.
But this remedy, like the ordinary one, is intended to facilitate, not to retard, the making of the money. It would be monstrous if it became necessary, on the neglect of the bidder to *223 pay, to carry on legal proceedings against him ; which, like others, might be lengthened by ill faith and chicane, whilst other bidders stood ready to bid and pay. It is not easy to see how often and how long, the intervention of a friendly bidder might delay an execution, if a bid, unaccompanied with a tender, could not be passed over.
In the present case, the land was struck to the appellants on the 11th of August, 1819, they declined to pay, and sought only to avail themselves of this bid on the 2nd of January of the following year. Can a cash sale be thus converted into one, at a credit of nearly six months, in that manner, without paying any interest?
We are of opinion that in cash sales by the sheriff, the money must be paid down at once, or the bid may be disregarded. In cash sales, the vendee acquires not the property of the thing without paying the price. The bidders have themselves alone to blame in this instance ; they cannot ask to avail themselves of a bargain, by requiring the performance of the duties it imposed on the other party ; while they themselves refused to comply with the obligations which it had laid them under.
*224 It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.
Morel, on an application for a re-hearing. It is admitted by the judgment to be a principle of our laws, that a sale upon an execution, creates the same obligations as an ordinary sale, and that therefore, it can be dissolved by the mutual consent of the parties thereto; the judgment refers to the Curia, Remate, § 22, n. It might also have referred to the Civil Code, 491, art. 1 & 3 ; to Febrero, part 2d, book 3d, chap. 2d, § 5, n. 330, which declares that “ the judicial sale, when made in due form and accepted by the bidder, as prescribed by law, cannot be open, and that therefore, no more bids are to be accepted, because it is as firm and indissoluble, as if the very owner of the thing had made it by the contract: because the judge acts for him, and is thereto authorized by law, as well as to pass the sale in his own name and so the bidder can be compelled to pay by imprisonment, execution and all lawful means, to abide by his bid, and to fulfil the obligation which he has contracted ; and pay the liquidate amount in cash and no otherwise, because it is for the payment of creditors, *225 and therefore, it must be made in cash, and to the Politica de Villadiego, chap. 2d. de la instruccion, nos. 141 and 142; such is the law which governs in cases of judicial sales. They are in all similar, as to their effects, to private sales ; they are governed by the same rules; they create the same obligations: if this position be true, how can it be inferred, by any of the proceedings before this court, that the bidders Triccu and Bouligny, receded from their contract? Their consent to the dissolution of the contract is implied from their unwillingness to pay the money, in which they persisted from the 30th of August to the 2d of January ensuing. The appellants have two very strong reasons, to oppose to that implied mode of reasoning. 1. No consent to the dissolution of a contract can be implied from the refusal of the purchaser to pay. That refusal, let it proceed from whatever cause, such as inhability to pay actually, or even from bad faith, is not sufficient to dissolve the contract. An action only lies, either to oblige the purchaser to fulfil the conditions of the contract, or to have it dissolved; but it is never presumed to be dissolved of itself merely because the purchaser refuses to pay. Even the judge, before whom the action has been brought, may grant to the buyer, a *226 delay according to circumstances, provided that delay does not exceed six months. Civil Code, 360, art. 86 and 87. There is in fact, no law to support the doctrine, that a mere refusal to o pay can be construed into a consent to the dissolution of the sale. 2. The appellants had, as appears by their petition, to obtain a mandamus, to compel the district judge to grant their appeal, a very legal reason for not paying the purchase money ; and that reason was, that a great part of the land was claimed by a third person, who very shortly after the adjudication, threatened them to institute, and did afterwards institute, against them an action, to wit, in November, 1819, for obtaining possession of said land : all which facts were sworn to by the appellants, and stand uncontradicted by the appellee, and were by the said appellee admitted to be true in open court; far from refusing to pay, with a view to rescind the sale, the appellants did always hold the price ready, provided they were secured against that claim, which was notified to them immediately after the judicial sale of the land. This court by merely referring to the Civil Code, 261, art. 85 ; 2 Martin's Digest, 171, and 173 verbo courts ; Part. 5, 5, 34, will perceive that the danger of eviction is a sufficient cause for refusing pay *227 ment. Therefore, it is not true, to say that the refusal of payment can be construed into a consent to the dissolution of a sale. Such a doctrine would reuder the provisions of the code, entirely nugatory: by its means, any man, after having mala fide caused the property of another to be seized and sold, as the property of his debtor, might get rid of the action for damages to which he was liable from the purchaser. We all know that in case of eviction, the purchaser has a right to claim against the vendor the value of the thing, at the time the eviction takes place, if that value is higher than the price agreed upon, at the time of the sale. Let us, therefore, suppose that the day after an adjudication is made, the purchaser is offered a profit of fifty per cent. that at the same time, he is threatened with an eviction, and refuses to pay the purchase money, until secured in his bargain, so as to be enabled to dispose of the thing and make the profit offered. Will it be contended with any appearance of justice or equity, that in such a case as that, the creditor, at whose suit the thing was seized and sold, shall have a right to consider the refusal of payment as a consent to annul and rescind the adjudication, and by merely taking of his own accord an alias fi fa, to cause the property to be sold again ?
*228 It follows necessarily, that the only way to have this sale rescinded, which differs in no manner from a private sale as above said, was to have brought an action against the appellants, upon which they might have had an opportunity to prove that they had legal reasons for withholding the price from the seizing creditor, which, by following the course which the appellee has pursued, he has effectually prevented this cause coming before this court with all the proofs of matter of fact, with which the appellants expected to support their plea. No other facts (save those stated in the appellants’ petition, which have been admitted, and of which this court have seemed to take no notice in their decision) have come before this court, except that the appellants have refused to pay on the 30th of August, and that they have paid in January ensuing ? Is the court able then to give a correct decision, when they know, and when they see that by the course pursued by the appellee, the appellants have been debarred from their legal means of defence ? Can an alias fi fa, taken without their privity or knowledge, be made to operate to the ruin of their cause? No, certainly. Let a regular snit be brought against them ; let them have an opportunity to prove the facts they have sworn to, *229 and then the case will he fairly and legally before the court : or, let the court take for granted the uncontradicted facts, stated in their petition, and then their present decision, which is founded upon the implied consent of the appellants to the dissolution of the contract, must be reversed.
II. It is stated in the judgment, that the power to compel by imprisonment, and via executive, execution. &c. a bidder to pay the purchase money, is a cumulative remedy. The appellants maintain that they know of no other legal remedies but those prescribed by our laws, which are those only, enumerated in the authorities above cited ; either to compel summarily to pay or to bring an action for rescinding the sale. Those two remedies are pointed out by the Civil Code, 361, art. 86 & 87. “ If the buyer does not pay the price, the seller may sue for the dissolution of the sale.” The word sue sheweth that the matter must be decided by a tribunal. This law is nothing but the old Spanish law in more concise terms. The same doctrine is found in the Part. 5, 5, 38, commented by Febrero, part 1, chap. 10, § 1, n. 28, which only says, besides what stated in the Civil Code, that when the vendor *230 has made use of either one or the other remedy, that is to say, when he has asked the purchase money, he cannot alter his action, and would not be admitted to ask the recission of the sale, or when he has asked the rescission of the sale, he cannot ask the purchase money. Whatever may be the inconveniencies of that law, we have no other, and it is the only one which governs us. No other is referred to, in the judgment, and no argument can evade a formal law. Therefore, the appellants can safely conclude, that the two remedies abovementioned are not cumulative, since they are the only ones to be made use of in such codes.
III. By the sheriff’s return, the property has been determined to pass at the time of the adjudication, for as the law says, Curia, Remate, n. 26, loco citato, “ what is struck or adjudged at a judicial sale, is considered as a real and indissoluble contract, &c.” Feb. part. 2, chap. 2, § 5, loco citato, uses the same expressions. It therefore, follows, that at the same moment that the land was adjudged to the appellants, the sale was perfect. The obligations of the parties to the contract arose. The bidders contracted the obligation to pay the purchase money ; and the creditor the obligation to gua *231 rantee the bidders, as we see by the laws of 1817, p. 41, sect. 19 and 20, that in case of eviction, he is bound to refund the money which he has received. Now, suppose the bidders should have immediately paid the purchase money, which they would have done, if they had not been apprised of the claim aforesaid, and the claimants would have brought against them their action to recover the land ; was not the duty of the bidders pointed by the aforesaid law, to call in guarantee the seizing creditor ? The claimants succeed ; the appellants ask humbly of this court, what would have been their remedy ? Would it not have been to compel by due course of law the creditor to refund the money ? Could they oblige him to fulfil his obligation, by any other means but ordinary process ? And the appellants ask it again, by virtue of what law, should the seizing creditor be entitled to a summary process unknown in our laws ; to have the land seized and sold again, against our will, by virtue of a fi fa, taken in a suit to which we are no parties, and executed upon what is our property ? It is true, that the law requires the “ sheriff to make out and deliver a bill of sale”, but this not, in the humble opinion of the appellants, the period at which the property passes. The Civil *232 Code, 346, art. 4, saith “ that the sale is considered perfect between the parties, and the property is of right acquired to the purchaser, with regard to the seller, as soon as there exists an agreement for the object and for the price thereof ; although said object has not yet been delivered, nor the payment made.” Therefore, the deed, to be delivered by the sheriff, is only the legal proof that a judicial sale has been made, but is not necessary for conveying ; the conveyance is complete as soon as the thing is adjudged (if the same principles are applicable to judicial and to private sales.) As it is complete in private sale, as soon as the parties have agreed upon the thing sold and upon its price ; it requires only in both cases, to have a legal proof of it ; in case of judicial sales, it is the return of the sheriff, or the deed of sale ; in case of private sale, it is an act or writing, signed by the parties. In the case of the appellants, they have only the return of the sheriff, because he refused to deliver them a deed when they paid him the purchase money. At all events, the appellants hope that they could shew that, if the two returns of the sheriff are not a complete proof, that the land has been adjudged to them, they are at least a beginning of written proof, sufficient to admit them to complete their *233 proof by oral testimony ; they refer for the soundness of their doctrine to Martin's Reports, in the case of Zanico vs. Habine. 5 Martin, 372.
IV. The appellants beg leave to be admitted to shew that there is nothing monstrous in the laws that govern the present case, and that the great inconveniences, which this court seem to fear from bad faith and chicanery, cannot be applicable to the doctrines laid down in the laws cited by the appellants, which are the only ones applicable to their cause. At all events, those reasons might be very good to induce the legislature to change those laws, but, as long as they remain in force, the appellants think that they must be observed.
V. It must be an easy matter to oblige the appellants to pay an interest, if they owe it ; but they maintain that, having had good reasons to refuse payment, they do not owe any. They humbly beg to be admitted to shew, that the appellee has a sure remedy, to make them pay interests and damages, if they owe them, which would be to bring against them an action for that purpose.
VI. The laws above cited, which are the *234 only ones applicable to this case, shew but two remedies—to obtain either the payment of the thing sold, or to rescind the sale. We see that the plaintiff and appellee, in this suit, has not used the firsts which is to compel the purchaser by imprisonment or via executiva, to pay the purchase money ; and that he has chosen to take the via executiva to obtain his purpose, in other words, that he has taken an alias fi fa, for selling again the land at a judicial sale. It it is a well known law of this state, that the debtor has always the faculty of liberating himself from the effects of the execution, by his paying the debt, at any time, before the adjudication of the property seized upon him takes place. 2 Martin’s Digest, verbo Courts. Therefore, the said property having been, by the adjudication aforesaid, transferred to the appellants, although the thing was not delivered, nor the purchase money paid ( Civil Code, loco citato ) could only be seized upon them, and not upon the defendant Degruys, who had no more interest in it, and these appellants could, by virtue of the aforesaid law, liberate themselves, before the judicial sale of said property seized upon them took place, which they have done, and the sheriff, the legal agent of the creditor, accepted their tender and received the *235 purchase money. They believe that they can satisfactorily shew, that the return of the sheriff on the first fi fa, and his return on the second, (both of which shew, by a written proof, making part of the records of this court, that the property has been adjudicated to them, and that they have paid for it) form a most complete title in favor of the appellants to the said land. The consequence is, that they cannot be deprived of it by the summary process of the via executiva, and that a regular suit should be brought against them by any person who would choose to dispute their title. The plaintiff, T. Durnford, cannot, therefore, resort to the mode which he has pursued. He cannot divest the appellants of their title by any summary process ; by any fi fa taken in execution of a judgment to which the appellants were not parties. No alias fi fa then can be issued in the said suit, by virtue of which the said land can be sold again by a judicial sale.
No rehearing was granted.