### DAQUIN vs. COIRON & AL.

6ns674
49 1486
6NS 674
119 786

*He who bids at an auction for, and in the name of another, has not the right of availing himself of the bid*

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. The plaintiffs state they are heirs of Thomas Daquin and Francois Daquin, who, in their life time, were owners of a tract of land in

the parish of Plaquemine, known by the name
of *Chene Vivant*, having forty-five arpents front, with the ordinary depth, and eighteen slaves.

That after the death of Francois Daquin, his daughter Marie Antoinette Daquin remained without any tutor legally appointed to her, although her uncle Thomas Daquin pretended to act as such.

That the said Thomas Daquin in his own name, and as tutor to his brother's daughter did, in the month of January, 1810, pray for an order of sale of the property which he held in common with her, but although the said sale was ordered it never was effected in any legal manner, nor indeed in any manner at all;— and that when Thomas Daquin died in September, 1810, the plantation and slaves were still his property, and that of his brother's daughter and heir.

The property since that time has passed through several hands, and the respective vendors are cited in warranty, and before the court. By the answers they have put in, the title of the plaintiffs is denied. They aver the land was legally sold, and that all the right of he petitioners is by that sale vested in them.

They further plead, that the property was sold to pay the debts of the plaintiffs' ancestors, and that if recovery is had in the present suit, this money must be repaid.

And finally, that the defendants are *bona fide* possessors and as such are entitled to retain the fruits they may have gathered on the property, and to be paid for any improvements they may have put on it.

The title on which the defendants rely is derived from two sales, one made by the court of probates at the request of Thomas Daquin, the ancestor of one class of the heirs now before the court, and uncle to the other. The second was on a writ issuing from a court of ordinary jurisdiction at the suit of those who had originally sold to the ancestors of the plaintiffs.— The first requires the most particular attention, for on its validity, as will be hereafter seen, the legality of the second depends.

On the 19th of December, 1808, Whitten Evans, of Philadelphia, by his attorney in fact, sold to Thomas and Francis Daquin the plantation now sued for, and eighteen slaves, for the sum of $23,500, payable in six equal and annual instalments. This sale contains the pact of *non alienando,* and one Charles Ber-

rome Dufau became surety that the purchasers would comply with the contract.

Shortly after the date of this sale Francois Daquin died, and by the request of the surviving partner and brother, Thomas Daquin, and the advice of a family meeting, the plantation and slaves were put up at auction, and adjudicated to one Charles Massicot, through his agent Dufau, the same who was surety in the contract between Evans and the Daquins Massicot denied the authority, and refused to sanction the purchase. The plantation remained in the possession of Daquin's heirs for nearly two years when Dufau applied to the parish judge, had himself declared the buyer in place of Massicot,, and was put in possession.

The validity of this conveyance to Dufau has been assailed on various grounds:

1st. That there was not such a family meeting deliberating in regard to the alienation of the minors' property as the law required.

2d. That the minor heir of Francois Daquin was not assisted by a tutor.

3d. That the property was sold for less than the price of estimation.

4th. That it was stricken off to Massicot, not to Dufau, and that the latter had no right to take the purchase for himself.

5th. That the property never was sold. The signature of the parish judge, the tutor of the minor, and that of the surviving partner being wanting to the act of adjudication.

We are strongly inclined to the opinion that all those objections are well taken, and supported by the evidence before us; but we deem it unnecessary to examine any but the two last.

In the process verbal of the sale which took place on the 6th of January, 1810, it is stated that the property was adjudged to Chs. Borrome Dufau, for and on account of Charles Massicot, on the same credit the vendors obtained from Evans, for $23,260.

Two years after, viz: on the 26th of March, 1812, a memorandum is inserted in the process verbal of the sale, stating that Massicot having renounced the purchase made by him, the judge considered C. B. Dufau as the purchaser, and had put him in possession.

It appears to us the parish judge had no authority to do this, and that such an act on his part did not transfer the property to Dufau.— We leave untouched the question whether Dufau having bought, without authority, could not be compelled to take the property at the demand of the owners or their representatives;

Eastern Dist
*May*, 1828.

DAQUIN & AL
*vs.*
COIRON & AL

but admitting that he coul , there certainly existed no right in him without their assent to be considered as the buyer. No contract had intervened between them. The land was not adjudicated to him. The process verbal of the sale declared it had been bought by another. It is most clear then, that without their consent no title to it could pass to him, and as they were minors that consent could be given only in the manner which the law has prescribed for the alienation of their property.

It does not appear to have been ever given, and admitting this objection could be got over, the other appears to us insurmountable. The process verbal of the sale is neither signed by the vendor, nor the tutor, nor by Thomas Daquin, then alive. The sale therefore was in as wanting the signature of the parties, and the judge who acted as auctioneer. The title yet remains in the vendors. The objection that might perhaps be made under other circumstances, to the representatives of Thomas Daquin, that he acquiesced in the sale while alive, is destroyed by the fact that he too died before Dufau obtained an order from the parish judge to be put in possession, and that he never assented to the change of purchasers.—

No implied assent arising from any act of the plaintiffs, or their silence during their minority could give validity to these proceedings. 5 *Martin*, 372, 8 *ib.* 222, 11 *ib.* 709, 12 *ib.* 347.

Dufau, soon after he was put in possession, sold the property to Montegut and Hebert. To this act of sale, Evans, the original vendor, became a party, and accepted their engagement to pay him. Failing to comply with their promise, an order of seizure and sale was taken out, and the premises and slaves now in dispute, sold. It is unnecessary to enquire into the regularity of these proceedings, for conceding they were perfectly so, they could only transfer the right which Montegut and Hebert had from Dufau, and the invalidity of Dufau's title has been already explained.

The same observations apply to the defence set up that this was a partition, not a sale.— Considering it as a licitation, the want of the signatures of the vendors, and the party under whom the defendant claims not being the purchaser, is equally fatal to his title.

The most important question in the cause arises out of the claim set up by the defendants to be paid for the improvements, and not to be responsible for the fruits they have gathered.—

By an agreement on record, the parties have consented to waive all questions respecting the amount of the improvements until after the decision of the court on the titles. But we have been pressed in the argument to express our opinion on the principles which should govern the court below in adjusting the claims growing out of this part of the case.

Eastern Dist.
*May,* 1828.

DAQUIN &
AL.
*vs.*
COIRON & AL.

The plaintiffs admit the defendants were possessors in good faith, and the question is what are the rights of such a possessor, in case of eviction by the real owner.

It is deemed unnecessary to enquire how the question stood in Spain, or how it would be decided by the laws of that country, believing, as we do, that our code has introduced provisions on this subject incompatible with any other previously existing.

This case must be governed by the provisions of the old code, and we cite from it:

*Page* 102, *art.* 1, it is declared "the produce of the thing does not belong to the simple possessor, and must be returned with the thing to the owner, who claims the same, except in case of the detainer having possessed *bona fide.*"

*Page* 104, *art.* 12, it is again provided, " nevertheless, if the plantations, edifices, or works may have been done by a third person, evicted, but not sentenced to make restitution of the fruits, because said person possessed *bona fide*, the owner shall not have a right to demand the suppression of the said works, plantations, or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship—or to reimburse a sum equal to the enhanced value of the soil."

*Page* 480, *art.* 30, there is a further provision, "that the possession of him who possesses with a good conscience has also this effect, that while he is ignorant of a better right to the thing than his own, he enjoys and makes his own the fruits which he gathers, and not only those which he reaps from the ground by his own industry, but likewise those which the ground produces without culture; and if it happens that the thing is evicted from him, he shall restore no part of what he enjoyed before the demand, but he will be obliged to restore the fruits which he reaped after the demand.

It would be difficult by positive legislation

Eastern Dist.
May, 1828.

DAQUIN &AL
vs.
COIRON &AL

to provide more clearly for the case now before us, than the enactments just cited, do.— They expressly declare that the *bona fide* possessor makes the fruits his own—and they as explicitly declare that in case of eviction the owner must reimburse him the value of improvements. There is no grounds therefore for this court to say the one must be compensated by the other—if we did, we should certainly violate the commands of the law—for the possessor would not make the fruits his own if we decreed he should pay for them; and where would be the difference between his paying for them in money at the time of eviction, or in paying for them in improvements by which the estate is benefitted, we are unable to perceive.

These provisions also settle another question much debated among the civilians, whether the owner was obliged to reimburse the value of the materials and workmanship, or merely the enhanced value of the land. They give the choice to the owner.

The judge below was of opinion the plaintiffs should recover the property. In that opinion we concur—as we do also in the view he took with regard to the ameliorations; but we can-

Eastern Dist.
*May*, 1828.

DAQUIN & AL
*vs*
VOIRON & AL

not agree with him in regard to the defen-
dants cited in warranty not being paid the a-
mount of the purchase money before the plain-
tiffs are put in possession.   He seems to think
they had no right to stop the entry of the pe-
titioners, until the money is paid.   It is now
the settled jurisprudence of the court, that
when the property of minors is sold, to pay the
debts of their ancestors, from whom that proper-
ty is derived, they cannot recover the property
on the ground of the proceedings being infor-
mal, without repaying the money which has
been applied to their benefit.   In the present
case the several vendors being cited in war-
ranty, the parties stand before us in the same
situation as if the first purchaser was in
possession, and the suit had been instituted
against him.

In the present instance the right of the seve-
ral vendors cited in warranty has not been pas-
sed on in the court below ; nor is there any ev-
idence before us of the value of the improve-
ments; the case therefore cannot be finally de-
cided on—it must be remanded for investiga-
tion on these points, and the facts once ascer-
tained, one judgment, can settle the rights of all
the parties before us.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided and reversed; that the case be remanded for a new trial, and that the appellees pay the costs of this appeal.

*Eastern Dist*
*May, 1828.*

DAQUIN & AL
*vs.*
COIRON & AL

*Derbigny* for the plaintiffs, *Mazureau* and *Grymes* for the defendants.