PARROTT et ux *v.* WIKOFF et al.

*Where the meaning of a contract is doubtful, the intention of the parties may be inferred from the manner in which they have executed it. C. C. 1940, 1951.*

APPEAL from the District Court of St. Landry, *Boyce,* J. *T. H.,* and *W. B. Lewis,* for the appellants. *Swayze* and *Taylor,* for the defendants.

The judgment of the court was pronounced by

EUSTIS, C. J.[*] The conclusion to which we have come on the merits of this case dispenses with the necessity of examining the preliminary and incidental questions, which have been presented to us in argument, and the plea of prescription which has been urged on behalf of the defendants.

On the 12th day of July, 1811, the Commissioners of the United States for the Western District of the late Orleans Territory confirmed to *John Dinsmore,* of the county of Opelousas, his claim to a tract of land containing about five hundred superficial *arpents,* being for ten *arpents* front by the depth of fifty-two *arpents,* bounded on the south side by land conceded to *Pierre Richard,* and on the north side by land conceded to *Joseph Cormier,* situated in the county of Opelousas, in the quarter of Bellevue, and held by virtue of a grant from the Spanish government to *Charles Como,* bearing date the 4th of March, 1776— to have such form and marks, natural and artificial, as should be represented on a plat to be returned by the principal deputy surveyor of the district. In pursuance of this order a survey was made, and a plat returned and recorded, fixing the township and range in which the tract was located, and establishing the form, boundaries and marks which were attached to it.

*Dinsmore* appears to have resided on this tract, and to have improved it, and, on the 12th of Nov., 1817, he sold it, with all the buildings and improvements to *Hubert Jany,* and describes it as "bounded on the east end by the purchaser," and gives it the dimensions of ten *arpents* in front, by fifty-two in depth. On the 16th December, 1818, *Jany* sold the tract to *Wikoff,* the principal defendant, but described it as having ten *arpents* front on the bayou Tesson, by a a depth of fifty-two *arpents.* *Wikoff* resided on this land and improved it, and, on the 7th of Sept., 1836, sold it to *De Kerlegand,* under the description of a certain tract of land situated in the prairie Bellevue, in the parish of St. Landry, having ten *arpents* fronting on the bayou Tesson, by fifty-two *arpents* in depth, &c. This sale was made for $6000, payable on a credit. It was sold, with all the improvements, which, at the time of the sale, were worth $5000 ; and is described as having been purchased by the vendor from *Jany,* in Dec., 1818. The notarial office is mentioned in which the act of sale from *Jany* is made. In this act from *Jany* the land is described as having been purchased from *Dinsmore.*

In March, 1837, *De Kerlegand,* before any portion of the purchase money was paid, sold the tract of land, with the buildings and improvements, to the plaintiffs, as he had purchased it from *Wikoff,* giving to the eastern extremity of the tract the description of having ten *arpents* fronting on the bayou Tesson, by fifty-two *arpents* in depth. The plaintiffs were fully subrogated to all the rights

---

[*] KING, J., did not sit on the trial of this case.

of *De Kerlegand*, and assumed the payment of the purchase money to *Wikoff*. They paid two of the notes given by *De Kerlegand* for the land, but refused to pay the last.

It will be observed that *Jany*, in his act of sale to *Wikoff*, changed the description of the eastern line of his tract. *Dinsmore* described it as bounded on lands of the purchaser, *Jany*; but when the latter sold it to *Wikoff* he described it as *fronting on the bayou Tesson*, and this description has been preserved in the subsequent sales.

*Wikoff* instituted his hypothecary action against the plaintiffs on the last note due for the purchase by *De Kerlegand*, and the plaintiffs obtained an injunction against the proceedings. On the trial of the case judgment was rendered dissolving the injunction, and directing the hypothecary action against the plaintiffs to proceed without interruption, and giving the defendant in injunction damages against the plaintiffs, and their surety, *in solido*.

The plaintiffs, in their petition for an injunction, charge that, before completing the payments for said land as stipulated, they discovered—what they did not know when they purchased—that neither *De Kerlegand*, nor *Wikoff*, ever had any title to the land described in their two acts of sale, but that their title covered a portion only, and that not the most valuable; and that the portion amounting to one hundred and fifty or sixty acres, lying on the bayou Tesson, never did belong to either of them, and that the sale of that portion is null; that the said land on the bayou, or about two hundred superficial acres, is all woodland, and by far the most valuable portion of the whole tract, and that the rest is of little value. The usual allegations of warranty &c., are formally made, and the plaintiffs pray for a recision of the sale, or, in the alternative, for a reduction of the price. In relation to this allegation alone we proceed to determine the case.

It is admitted that neither of the parties, nor their vendors, ever owned any portion of the land between the bayou and the eastern limit of the *Dinsmore* tract. The bayou Tesson is not navigable, and it is not contended that there is any benefit to be derived from the proximity of land to it. There are between forty and fifty acres of woodland in the land along the bayou, which is worth about five dollars per *arpent*, and this alone gives it more value than the rest of the land. The plaintiffs resided on the tract of land contiguous to the *Dinsmore* tract, at the time of the purchase and since.

The tract of land as confirmed to *Dinsmore*, of which a plat was returned and recorded in the land-office, is in the form of a parallelogram, and the north eastern corner of it rests on the bayou Tesson. A line from this point, extending ten *arpents* south, bounds the eastern extremity of the tract. The bayou, after leaving this corner, is very crooked, and the extension of the southern lateral line of the tract, from the termination of the fifty-two *arpents* to the bayou, which includes the superficies of nearly two hundred acres, measures at least forty acres. Within this space are parts of several tracts fronting on the bayou, held under concessions, the location of which is not questioned. The extension of this lateral line would cut off the front of these tracts on the bayou. The question before the court is, whether the land sold was the *Dinsmore* tract, in its rectangular form, as held by *Dinsmore*, by *Jany*, by *Wikoff*, by *De Kerlegand*, and by the plaintiffs, without complaint, from 1837 till 1842, when the last payment was exacted, or whether it included the land along the bayou within the prolongation of the southern lateral line, by reason of the use of the terms "fronting on the bayou Tesson."

PARROTT
v.
WIKOFF.

That the parties have always been in possession of the *Dinsmore* tract of ten *arpents* by fifty-two in depth is not questioned, and that *Wikoff* never owned, or possessed, any land east of the eastern limit of the tract, is conceded. That the plaintiffs have the quantity of land called for in the acts is admitted, and, as the northern lateral line terminates on the bayou Tesson, it follows that it must extend fifty-two *arpents* west, and that, at that point, the western boundary of the tract must be fixed. In the plat returned by *Lawson*, the surveyor, on the confirmation of the *Dinsmore* tract, the western limit was designated and marked by a post at each corner, and *McCauley*, the surveyor who made the last survey, under the order of the court, which we have before us, a witness offered by the plaintiffs, swears that, he found the corners of this tract, and the posts as planted by *Lawson* and referred to in the recorded plat. This puts beyond the possibility of a doubt the western boundary of the tract, which is established by visible and official marks of unquestionable authority.

The plaintiffs contend that *Wikoff* sold a tract of land having certain specified boundaries, so clearly defined as to leave no room for doubt as to the object sold; and that the call in the acts of sale for a front on the bayou Tesson is imperative, and carries with it all the land included between the extension of the lateral lines up to the bayou. The rule laid down by the late Supreme Court in the case of *Morgan* v. *Livingston*, 6 Martin, 224, is relied on, in support of this position. Admitting that rule to be applicable to this case, its operation would be to cut off the fronts of all the estates on the bayou within about forty *arpents* from the boundary of the possessions of the plaintiffs and their predecessors, and thus preclude all access to these estates from the bayou. These tracts of land were located by the land commissioners on the bayou, and the *Dinsmore* tract was located with only one corner resting on it. Their lines are nearly at right angles with the bayou, and, with a small variation, are in the same relation to the lateral lines of the *Dinsmore* tract. That in the face of these facts it can be supposed that *Wikoff* warranted the extension of the *Dinsmore* tract in its whole front to the bayou, or that the plaintiffs, residing on the tract adjacent at the time of the sale, and afterwards occupying and improving the land from 1837 to 1842 without objection, believed that the tract of land they purchased and held had any such extent, or that any doubt could be reasonably entertained, from the means of information with which the plaintiffs were surrounded, in relation to the object sold, we cannot consider to be within the bounds of a reasonable probability; and we should feel ourselves bound, before giving effect to this call, which would lead to such results, to carry out others which would be consistent with the known state of facts, and which would render a compliance with this impossible. But the rule in *Morgan's* case is not applicable to this, in any sense.

It is true that the words *fronting on the river* denote generally, in grants and conveyances, a riparian estate bounded on a river. But the bayou Tesson is not a river; it is a bayou, small, dry the greater part of the year, and in no respect navigable, or susceptible of being used for the purposes of a river. There are no riparian charges, to which the estates bounded on it, or through which it passes, are subjected; no roads which front proprietors on rivers are bound to give to the public. We are not prepared to lay down any general rule in relation to the distinction which we here notice; but, in relation to this case, we are satisfied that the designation of this bayou as a boundary in these acts, does not create a riparian estate in the sense of those terms under our laws, and that

it has no more effect than the designation of any other natural object as a limit; and that, furthermore, the land which it is contended this designation embraces has no advantages in point of position over the rest of the tract, and is not in any manner to be distinguished from it, the forty-five acres of woodland being the only fact which it is possible to maintain gives it any additional value over the ordinary prairie land. Considering then the bayou Tesson as a designated boundary given in the acts, can it be carried into effect consistently with the other calls or descriptions, and with the state of facts which we know materially to exist?

I. If the bayou be the boundary, the plaintiffs would have nearly two hundred more superficial *arpents* of land than the acts of sale call for, or they, or their predecessors, have ever possessed.

II. The western boundary of the tract being fixed by the original survey, the extent of the lateral lines is limited to fifty-two *arpents*, and the lines at each extremity are parallel.

III. A location with the bayou for the boundary, having the quantity of land mentioned in the acts of sale, would destroy entirely the shape of the tract. By the extension of the southern lateral line to the bayou, and by making the rear line parallel with the front according to the course of the bayou between the lines, which is in an oblique direction, at the western extremity, the tract would terminate in an acute angle of less than forty degrees, and the southern lateral limit be carried nearly forty acres beyond the original location, and terminate in an angle corresponding to that opposite, and thus destroy the rectangular form of the tract.

IV. The extension of this line would not answer to the call of ten acres fronting on the bayou; it would give upwards of twenty, and the line would be nearly at right angles with the lines of the tract fronting on the bayou on which it would inpinge.

It is obvious that a description leading to such consequences as this, renders it incumbent on the court to look elsewhere than to the mere literal words for the intention of the parties. The other words of description in the act leave no doubt as to the intent of the parties, in relation to the thing sold. The *Dinsmore* tract as occupied and possessed from the year 1812, under the limits designated on the plat, recorded in the land-office, was the object bought and sold; and, if the consequence of the adoption of the location on the bayou contended for by the plaintiffs, rendered the intention of the parties doubtful by reason of their excluding other descriptions equally formal in the acts of sale, we have it in our power to remove all difficulties in respect to the true and *bonâ fide* intent and meaning of the contract, by referring to the manner in which the parties have executed it themselves. Civil Code, arts. 1940, 1951.

It is not pretended that there has ever been any land held under the *Dinsmore* title, other than that now possessed by the plaintiffs, which corresponds in quantity and limits to the original survey of *Lawson*. It was so possessed by *Wikoff*. *De Kerlegand* never complained of any defect of quantity or location; and the plaintiffs, who resided on the adjacent tract at the time of the sale, appear never to have been sensible of their wrongs, until nearly five years after they had occupied the property, and the last payment was sought to be exacted.

There is no charge of fraud made in the case, and there is no question of law which presents itself for our decision, unconnected with facts upon which the court below has passed, and which we find to be established by evidence. The judge of the district has allowed the defendants $200 damages, on account of the

PARROTT
v.
WIKOFF.

illegal suing out of the injunction; and we think the allowance ought not to be interfered with by us. It depended upon matters upon which the judge was well qualified to form an opinion, from his position and his opportunities.

. That an estate, the plan of which under an official survey is deposited in the public records of land titles, should be well known as to its extent and boundaries, by the proprietor and purchaser, is probable in a sparsely populated district like this. That the previous contiguous residence of the plaintiffs strengthens that probability, is indisputable. The *Dinsmore lines* are spoken of by witnesses as familiar facts, and the reference to the original ownership of *Dinsmore*, in the act from *Jany* to *Wikoff*, though not proof of knowledge, yet is a means of knowledge, which, coupled with other facts, may be considered as bringing home to the plaintiffs the origin and real extent of his title. There being no charge of fraud, the only ground on which the plaintiffs can have any claim against the defendant is that of error as to the subject of the contract. This has not been proved, and if there was any error as to the location, the error related to a part of the land no more valuable than the rest in point of position, and, as to its extent and quality as woodland, the difference of value is too insignificant to furnish a reasonable cause for withholding any part of the price. Civil Code, arts. 1836, 1837, *et seq.* There is neither error as to the object of the contract, nor the substantial quality of it. The sale was *per aversionem :* it was of a tract of land built upon, improved and occupied, and not of land of a particular quality.

Our conviction is that there is no equity in the plaintiffs' case, and and there is no principle of law upon which we can change, in any respect, the judgment appealed from.                                                    *Judgment affirmed.*