State, *ex rel.* Keith *et al.*, *v.* Common Council of Michigan City *et al.*

No. 16,679.

The State, ex rel. Keith et al., *v.* The Common Council of the City of Michigan City et al.

138  455
154  297

138  455
171  262

Municipal Corporation.—*City.*—*Street Improvement.*—*Street Railway.* —*When Cost of Paving Between the Rails is Chargeable to the Railway Company.*—Where, by contract between a street railway company and a city, it is left to the judgment of the council whether they would assess the cost of pavement between the rails, against the railway company or against the abutting property, the assessment for the cost between the rails of the street railway can not attach to the abutting property when the ordinance directs that it shall be levied against the property of the company, and the contractor is sent to it for his pay.

Same.—*Street Improvement.*—*How Made.*—*Cost of.*—The street improvement could only be made on the order of the common council, and the assessment for its cost could be directed only against the specific property designated in the ordinance.

Same.—*Street Improvement.*—*Authority of Mayor to Contract for.*— *When Ordinance a Part of Contract.*—If a mayor enter into a contract with a bidder for street improvement, by authority of the common council, his contract with the contractor for the improvement is binding only in so far as it is within the power conferred by the common council, and the ordinance directing the improvement, when properly referred to, constitutes a part of, and is the base of, the contract. That the ordinance is a part of the contract, see opinion.

Same.—*Street Improvement.*—*Duty of Contractor to Take Notice of Ordinance.*—*Contract.*—It is the duty of a contractor to inform himself as to an ordinance on which his contract is based and which is to form the basis of his claim.

From the La Porte Circuit Court.

*J. H. Orr* and *W. B. Biddle*, for appellants.

*J. F. Gallaher*, for appellees.

Dailey, J.—The city of Michigan City, Indiana, is organized under the general law of the State of Indiana governing municipal corporations, chapter 21 of the Revised Statutes of 1881, and the authority of the city gov-

ernment to alter and improve the streets within the city limits, and to burden the abutting property with the cost of such alterations or improvements is derived from article 4 of that chapter, in which the method of improvement and assessment is set forth in detail. At the time of the proceedings involved in this action, the law as set forth in the Revised Statutes of 1881 was in force.

Acting under the powers which were thus conferred upon them by the Legislature, the common council of said city, in the month of March, 1887, adopted an ordinance providing for the grading and paving of a part of Franklin street therein. The ordinance embodies the plans and specifications which were adopted at the same time, and is set out in the record. It is provided in this ordinance, that publication shall be made according to law, inviting bids for the performance of the work ordered; and in response to this publication the bid of the appellants, George Keith and David F. Woodcock, was tendered and accepted, and William F. Woodson, mayor of the city, was instructed to enter into a contract with the successful bidder.

The contract, as executed by George Keith for the appellants and by William F. Woodson for the city (appellee), appears in the record. This ordinance and the contract fully cover the transactions carried on between the city and the contractors; but the matters in controversy in this action introduce another corporation, namely, the Citizens' Street Railway Company.

In March, 1886, the common council of said city granted to this company permission to lay its tracks upon and along the streets thereof; and the portion of Franklin street ordered to be improved by the ordinance set forth in the record was a part of the route located by the street railway company, and their tracks occupied a strip four feet and eight inches in width in the center of the

street, from the south line of the Louisville, New Albany and Chicago Railroad south to Eighth street. One of the conditions contained in the franchise of the street railway company reads as follows: "Said street railway company shall plank or otherwise and substantially pave the space between its rails to a height equal to the surface of the rails laid by it."

It is not our purpose to discuss the force and effect of this condition at this place, and it is quoted here solely for the purpose of explaining this language in the ordinance:

"The cost of said improvement shall be borne by the property-owners owning lots or parts of lots fronting on the line of said street improvement, *pro rata*, according to the number of feet front owned by each owner, except the space between the rails of the Michigan City Street Railway Company's track, the cost of which shall be borne by said railway company," and the provisions in sections 4 and 5 of the ordinance, directing that the pavement between the rails of the street railway company should be separated from the balance of the pavement in the estimates of the city engineer, should be separately assessed by the council, and that its cost should become a separate lien.

Under this ordinance and contract the appellants performed the work of improving the street, and, in due time, the city engineer made the estimates which appear in the transcript, as a part of the return to the alternative writ.

The assessments, as made by the engineer, were approved by the common council and collected by the appellants, with the exception of the amount assessed against the street railway company, payment of which was refused by the company. Thereupon the appellants brought an action in the La Porte Circuit Court against

the Citizens' Street Railway Company, for the recovery of the amount assessed against it, but failed to recover judgment, and withdrew their suit. They then filed their petition in this action, asking that a mandate issue commanding the city authorities of Michigan City to assess the cost of the pavement between the rails against the abutting property, in addition to the amount this property had already paid on the cost of the improvement. The return of the city (appellee) to the alternative writ sets up the facts substantially as they have been sketched above.

Appellants demurred to this return on the ground that it did not state facts sufficient to constitute a defense to the writ, and upon the overruling of this demurrer they declined to plead further, and appealed to this court. The question for decision, then, is: Under the facts shown by the return, should the cost of the work between the rails be assessed against the abutting property?

The first position taken by the appellants' counsel is that the contract entered into by the city and the appellants provides that the cost of the whole improvement, including the part between the rails of the street railway company, shall be assessed against the abutting property. To justify this position it is argued that the contract is complete in itself, and should be considered independent of the ordinance. If all reference to the ordinance were removed from the contract, the construction contended for might be accepted as correct. But the contract does refer to the ordinance repeatedly and specifically, as follows: "That they will do all the paving and curbing on Franklin street, in said city, as mentioned in the ordinance and specifications for the paving and curbing of Franklin street," etc. Also, "that said party of the second part [appellants] will furnish all material,

and do all the work in curbing and paving Franklin street between the points designated, according to said ordinance and specifications, which ordinance and specifications are now on file in the city clerk's office, and to which reference is hereby made."

It would seem that this language is plain and broad enough to prevent a severance of the contract and ordinance, but it is contended that these references relate only to the question of specifications, such as the amount and quality of labor and material. These details, it is admitted, are incorporated in the contract by reference to the ordinance, and this must be so, otherwise the written contract would be incomplete and meaningless.

As to the method of payment for the work, it is argued that the ordinance is not alluded to, and the court is not authorized to go outside of the language of the contract in this respect.

Let us consider another clause of the contract. "Said party of the first part agrees to prepare the street for the purpose of curbing and paving in the manner required by said ordinance and specifications, and to pay said parties of the second part for all that part of said paving and curbing which said party is to pave and curb, according to said ordinance and specifications and plans, which are a part of this ordinance." This portion of the contract, it seems, clearly refers to the method of payment. The effect and intent of the language is evidently mistaken in appellants' brief, in which it is insisted that these references to the ordinance are only for the purpose of identifying the work. This portion of the contract is the agreement on the part of the city to pay. The work to be done is covered by the preceding part of the contract. The words "according to the ordinance and specifications" occur twice. It is unreasonable to assume that in each instance the phrase qualifies "pav-

ing and curbing,'' and in neither refers to the method of payment, which is the subject of the paragraph. The proper reading of this portion of the contract is, ''the said party of the first part agrees to pay * * * according to said ordinance and specifications.'' In answer to the inquiry, ''why should the word specifications be used in connection with the matter of payment?'' it might be asked with equal propriety, why should the ordinance be referred to in order to identify the work? If the specifications say little as to payment, the ordinance states nothing as to labor and material, save as it incorporates the specifications; hence we are led to the conclusion that the ordinance is referred to to designate the method of payment. The ordinance is mentioned once more in the contract, as follows: ''All the work done under this contract and said ordinance shall be completed by the first day of September, 1887,'' thus indicating that the parties to the agreement intended at the time to act under the ordinance.

It is clear that the references to the ordinance in the contract are with the intent and purpose of making the terms of the ordinance a part of the agreement, both as to the method of payment as well as to the amount and quality of labor and material. It is sound doctrine that ''where two writings are connected by a reference of one to the other, they may be considered and construed as constituting but a single contract, in the same manner as if embodied in the same instrument.'' *Sewall* v. *Henry,* 9 Ala. 24.

In *Bradstreet* v. *Rich,* 72 Me. 233; *Bradstreet* v. *Rich,* 74 Me. 306, it is held that when a contract has reference to another paper for its terms, the effect is the same as though the words referred to were inserted in the contract.

In Parsons Contracts (8th ed.), vol. 2, pp. 669, 670,

State, *ex rel.* Keith *et al., v.* Common Council of Michigan City *et al.*

it is said: "If there are contemporaneous writings, * so far in relation to the same subject-matter that they may be deemed part and parcel of the same contract, although not referred to in it, they may be read in connection with it." These principles justify the contention that the ordinance must be considered a part of the contract. This conclusion receives further and more convincing support from the part of the record which relates to the subsequent actions of the parties under the contract, and indicates their conception of it at the time of its execution.

In *Chicago* v. *Sheldon,* 9 Wall. 50, it is said: "In cases where the language used by the parties * is indefinite or ambiguous, and, hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence."

"Acts of the parties leading to, or done at the time of the execution of the agreement, or done in reference thereto, and those facts in view of the existence of which the agreement was entered into, may be considered," in construing a clause thereof, the meaning of which is obscure. *Stapenhorst* v. *Wolff,* 35 N. Y. Sup. Ct. 25.

Any doubt as to the construction of a contract may be removed by the construction put upon it by the acts of the parties themselves. *Parrott* v. *Wikoff,* 1 La. Ann. 232.

By an examination of the estimates of the work done by appellants on Franklin street, which the city engineer was instructed by the common council to prepare, and which are set out in the record, it appears that the pavement between the rails of the street railway company was separately estimated and assessed, not against the abutting property, but against the said company, which warrants the conclusion that the city was acting on the

State, *ex rel.* Keith *et al., v.* Common Council of Michigan City *et al.*

presumption that the ordinance was a part of the con-
tract.    The action of the appellants is convincing on this
point.    The return states that they accepted these esti-
mates as payment, and proceeded to collect of the prop-
erty-owners the amounts assessed against the several
parcels abutting on the improvement; that in some cases
they gave receipts in full to the property-owners, and
afterwards brought an action against the company to re-
cover the cost of the pavement between the rails.    It is
true that it is alleged in the petition for the writ, that in
January, 1890, a demand was made on the common
council, for a correction of the estimates; but this was
more than two years after the completion of the work
and the collection of the assessments.    There can be no
doubt, in the light of the facts that are not traversed,
but that during the time they were acting under and in
pursuance of the contract, the appellants regarded the
ordinance as forming a part of the agreement by which
they were to be directed and controlled.

There is another view of the question.    A large part
of the argument of the learned counsel for the appellants
consists of an effort to eliminate the ordinance from the
contract, and to show that the latter must stand alone, un-
affected by the ordinance.    But it appears that the contract
has more need of the ordinance than the ordinance has
of the contract.    The ordinance is the act of the common
council.    The contract is an agreement executed by the
mayor of the city acting under its instructions.    The
council has authority to order street improvements, but
the mayor is vested with no such authority.

The petition recites:    "On the 11th day of July, 1887,
the said council authorized the mayor to enter into a
contract with the relator George Keith, to construct said
pavement, and in pursuance of said authority, on the
12th day of July, 1887, William F. Woodson, who was

then the mayor of said city, on its behalf entered into the following contract.''

The return of the city states:  ''That the said contract was awarded to said relator George Keith, and the council of said city instructed William F. Woodson, the mayor of said city, to enter into contract with said relator, Keith, and that on the 12th day of July, 1887, said Woodson, as mayor of said city, did enter into a contract with said relator Keith, for the furnishing of all materials and the constructing said improvement, as provided for in said ordinance, plans, and specifications.''

. The contract itself says:  ''In witness whereof, the said parties of the first part have executed this agreement by the mayor of said city of Michigan City, the day and year first above written, according to a resolution adopted by the common council of said city, July 11, 1887, instructing him to enter into such contract with said parties of the second part.''

The contract is signed by William F. Woodson, mayor of Michigan City.

There is nothing in the record alleging that this contract was ever approved by the common council, so that, as it stands here, it derives its sole claim to be an agreement of binding force upon the city, upon the authority previously conferred upon the mayor to execute it.   The mayor of a city can not give a contractor a lien upon the property of its citizens.   Contracts made by him have no more binding force against the city than have those of a councilman.   In the signing of this contract, the mayor was acting simply as the instrument or agent of the council, which alone has power to obligate the city. If then, in aught, he exceeded or varied from the authority which had been conferred upon him for a special purpose, his action to that extent was void as to the city, and the contract became the contract of the city,

only in so far as it complies with the instructions given to the mayor by the council when he was authorized to execute it.

The language last quoted from the return leaves no room for doubt as to what those instructions were which were given to the mayor by the council, and which were his only warrant for contracting at all. He was instructed to enter into the contract, which had already been awarded to the appellants by the acceptance of their bid, made in response to the publication of the city.

"The said contract was awarded to the said relator, Keith, and the common council instructed William F. Woodson, mayor of said city, to enter into contract with said relator, Keith."

All of this action was taken under the ordinance, and it certainly could not be claimed, with reason, that the mayor was authorized by these instructions, to enter into any contract differing from the ordinance by which the work was ordered.

The appellants say, in their petition: "The mayor entered into the contract in pursuance of this authority." Could he, in pursuance of this authority, have bound the city by a contract providing for a pavement of brick instead of cedar block, as ordered by the ordinance? Could he have contracted for a pavement sixty feet in width instead of fifty-four and a half feet in width, as specified in the ordinance? And if he had so contracted, would the court order the assessment of the extra cost against the abutting property? Certainly not; for the reason that his authority was limited to the agreements required by this ordinance, and for the further reason that the foundation for no other contract had been laid by the common council. The ordinance is the pillar which supports the contract. According to the record before us, it is the only action taken by the common

council, as a body, authorizing this improvement or justifying an assessment; and no action taken by any person or any other body can alter its specifications or amend its conditions.

The position here taken is only a part of the law of agency, but it has been frequently applied to municipal law by the text-books on that subject.

In Dillon on Municipal Corporations, section 447, fourth edition, the author says: "And it is a general and fundamental principle of law that all persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract." * * * "This principle is more strictly applied, and properly so, than in the law of private corporations. So, also, those dealing with the agent of a municipal corporation are likewise bound to ascertain the nature and extent of his authority. This is certainly so in all cases where this authority is special and of record, or conferred by statute."

Also from section 452 of the same work: "Where officers or agents of a corporation, duly appointed, and acting within the scope of their authority," sign an instrument, the instrument is to be regarded as the simple contract of the corporation. Note 2, under this section: "The general rule is unquestionable that a municipal corporation is not bound by the unauthorized acts of an individual, whether an officer of the corporation or a mere private person." *Davies* v. *Mayor of New York,* 93 N. Y. 250.

Where a committee was empowered to contract for the erection of a building at a price not to exceed a specified sum, it was held that they had no power to contract for a larger sum, and that the person contract-

ing with them was bound to take notice of the extent of their powers.    *Turney* v. *Town of Bridgeport*, 55 Conn. 412.

In section 935 of the second volume of Dillon on Municipal Corporations, the rule is thus stated: ''Nor, as we have before stated, is a municipal corporation bound by contracts, within the scope of its chartered powers, if made by officers or agents not thereunto authorized.''

The cases cited by counsel for the appellants in this branch of his argument are not at all opposed to the doctrine stated.

In *Clements* v. *Lee*, 114 Ind 397, it is held that a person about to enter into a contract with a city must inform himself as to the jurisdiction of the council to contract.

*Taber* v. *Ferguson*, 109 Ind. 227, decides that, as the statute does not require the proof of notice by publication to be filed with the clerk, the transcript will not be held bad on demurrer for want of the notice.

In *City of Indianapolis* v. *Imberry*, 17 Ind. 175, the court holds that it is not necessary for the council to place of record its determination as to whether or not the general fund shall bear a portion of the cost of the improvement.    We think these decisions are of no avail in determining what contract was made by the city, and what are its corporate obligations under the facts set forth in the return.

The third proposition submitted by appellants' counsel is, that the return of the writ furnishes no legal reason why the parties could not have contracted in total disregard and in ignorance of the provisions of the ordinance, which makes provision for the payment of a part of the cost of the improvement by the street railway company.    In our opinion the ordinance sought to be disregarded became an essential part of

the agreement. It is the duty of the contractors to inform themselves as to the ordinance on which their claim is based, and which creates the lien on the property that insures payment for the work.

In *Clements* v. *Lee, supra,* it is said: "A person about to enter into a contract with a city council, must examine the records so far as to see that the common council has taken, or attempted to take, the steps necessary to enter into a contract."

In *Johnson* v. *Common Council of City of Indianapolis*, 16 Ind. 227, which was a suit for work done in grading and graveling a certain street, the action was defeated for want of a petition as required by the law of 1852. The court say: "Of this the contractor was bound to take notice; and, hence, the duty devolved upon him, before he took the contract, of ascertaining whether the council had so conducted the letting as to render the property-holders liable. It was also his duty to satisfy himself as to their ability to pay." In the case at bar there is a provision in the ordinance which relieves the property from its liability to pay the cost of the part of the pavement between the rails, of which the appellants were bound to take notice. But counsel claim for appellants, that they were justified in ignoring this provision, by the fact that it has no legal force; this is based on the assumption that the clause in the street railway company's franchise, adopted in 1886, gives the council no right to assess against the company the cost of the pavement between the rails. The clause reads: "Said street railway company shall plank, or otherwise and substantially pave the space between the tracks to the height equal to the surface of the rails laid by it." The acceptance of a franchise containing this clause, by the street railway company, would constitute an agreement to pave between the tracks. In *Western Paving and Supply Co.* v.

*Citizens' Street R. R. Co.*, 128 Ind. 525, the court said: "It is settled that a charter granted by the common council to a street railway company to construct and operate a street railway within the corporate limits of a city, constitutes a contract between such railway company and the city." "It is also settled that such charter is to be strictly construed against the railway company, and that it has no doubtful rights under such charter, for where there are doubts they are construed against the grantee and in favor of the city." They further say: "It seems to be settled that a street railway company is bound to keep in repair that portion of the street used by it, even in the absence of a stipulation in its charter requiring it to do so, but the question as to whether it is compelled to improve the street as ordered by the city, in the absence of a contract to that effect, seems to be in some doubt." In the case under consideration there is a contract in the charter of the company to pave. In *Gilmore* v. *City of Utica*, 121 N. Y. 561, the question of the liability of the street railway company for a part of the care of the street pavement was raised by the action of a lot owner to restrain the collection of an assessment. The decision is to the effect that the provision in the charter granting to the common council power to assess the cost of paving between the rails against the street railway company, is permissive, and not mandatory, and, as the council saw fit to assess the whole cost against the abutting property, it was not a matter of complaint on the part of the property-owners. In the case at bar, the council adopted a plan exactly the reverse, and caused the cost of the pavement between the rails to be assessed against the street railway company.

Mention is made in this decision of a clause in the franchise, by which the railway company agrees to "re-

place and keep in good repair the pavement between its tracks, and at least two feet on each outer side."

The court say with reference to it: "The precise scope of the agreement growing out of the condition imposed upon the railway company is not clear, and it is open to doubt whether the company could be compelled to bear any portion of the expense."

But the doubt is occasioned by the language of the provision. It has been frequently held that an agreement to repair is not an agreement to pave anew.

In *Coast-Line R. Co.* v. *Mayor, etc.,* 30 Fed. Rep. 646, it is held that an ordinance containing provisions for paving, and accepted by the railway company, is a contract between the city and the company, and a subsequent statute enacted by the Legislature, increasing the amount of pavement to be paid for by the railway company, impairs the obligation of this contract, and is void.

In *State* v. *Mayor, etc.,* 30 N. J. Law 225, the rule is laid down substantially as follows: The mayor and common council have no authority to impose regulations upon, and exact a license from, a street railway company. Such powers must be found, if they exist at all, as a condition annexed to the grant of the franchise of the company or in the grant of a legislative power to the city by the Legislature, and in this case both grounds are wanting.

In *District of Columbia* v. *Washington, etc., R. R. Co.,* 1 Mackey (D. C.), 361, the court held that under an agreement in the franchise of the company to keep the space between the rails well paved, the company would be liable for that portion of the pavement laid on the street by the city. *Niklaus* v. *Conkling,* 118 Ind. 289; *People, ex rel.,* v. *Gilon,* 126 N. Y. 147; *Sioux City St. R. W. Co.* v. *Sioux City,* 39 N. W. Rep. 498; *Fort St., etc., R. R. Co.* v. *Schneider,* 15 Mich. 74; *Mayor, etc.,* v. *Second*

*Ave. R. R. Co.*, 31 Hun (N. Y.) 241; *City of Philadelphia* v. *Ridge Ave. Pass. R. W. Co.*, 143 Pa. St. 444; *State, ex rel.*, v. *Jacksonville St. R. W. Co.*, 10 Southern Rep. 590.

In Elliott Roads and Streets, p. 405, it is said: "Private corporations must take notice that the authority to improve streets is a continuing one, and it should be held that they use the streets subject to the authority, and charged with the duty of making the part occupied by them correspond with the adjoining parts. They accept the privilege of using the street upon the implied condition that they will do in the matter of improvements what adjacent land owners are required to do. The principle which applies to such cases is essentially the same as that which rules in cases where railroads cross or occupy ordinary highways. * * * The duty of paying the cost of the improvement having been assumed by the private corporation, it no longer rests upon the landowner for the landowner's obligation does not arise out of a duty to keep the street safe, but from the fact that his property has received a special benefit. * * Put the case upon the broad and equitable principle that he who receives the benefit must bear the burden, and it becomes at once apparent that the street railroad company should pay the cost of improving the highway."

If it may be said that the contract with the street railway company, created by the ordinance of 1886, left it to the judgment of the council whether they would assess the cost of this pavement between the rails against the railway company or against the abutting property, the fact remains that in this instance the council exercised its discretion, and ordered the cost to be assessed against the street railway, thus enforcing its rights under the franchise. The ordinance in question being a

part of the contract, the relators' petition is an application to the courts for relief from the results of their own agreement. It demands of the court that it shall, by mandate, compel the council to issue an assessment against the abutting property, which the council provided should be issued against other property. The franchise granted to the Citizens' Street Railway Company in 1886, the ordinance ordering the improvement, and all other proceedings of the council in connection with the proposed work were matters of public record at the time the contract was executed, and presumably in the knowledge of the appellants who made their agreement with reference to it.

The improvement in question could only be made on the order of the common council. The assessment for its cost can be directed only against the specific property designated in the ordinance. This being so, the assessment for the cost between the rails of the street railway can not attach to the abutting property when the ordinance directs that it shall be levied against the property of the company, and the contractor is sent to it for his pay.

We are of the opinion that the cost of the pavement between the rails should be borne by the company, and not by the abutting property; that mandate should not issue to compel the appellees to assess this portion of the cost of the improvement otherwise than is provided by the ordinance; that the facts set out in the return to the alternative writ are sufficient, and that the decision of the court below in overruling appellants' demurrer thereto was not erroneous.

The judgment is affirmed.

Filed June 21, 1894.