Filed February 13, 1896.

---

No. 17,724.

THE CITY OF INDIANAPOLIS *v.* WANN, RECEIVER.

144 175
162 204

144 175
167 632

MUNICIPAL CORPORATION.—*City.—Void Contract.—Street Lights.—* A contract for street lights for five years, at a certain price per light per year, payable monthly, made by the executive department of public works, when no appropriation for the purpose had been made except for a month or two in advance, is void, where the statute provides that no executive department shall bind the city by a contract, agreement, or in any way to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose, and that all contracts and agreements, expressed or implied, and all obligations of any and every sort beyond such existing-appropriations, are absolutely void.

SAME.—*City.—Void Contract.—Subsequent Appropriation.—Ratification.*—Subsequent appropriations for installments coming due on a contract made by city authorities in violation of a statute prohibiting contracts, for which appropriations had not already been made, cannot operate as a ratification of the contract so as to make it binding.

From the Marion Superior Court.

*J. E. Scott,* for appellant.

*Herod & Herod* and *Miller, Winter & Elam,* for appellee.

McCABE, J.—The appellee, as receiver of the Sun Vapor Street Light Company, sued the appellant to recover the sum of $552.75 as an installment due from the city for vapor lights furnished it for the month of January, 1895, under the terms of an alleged contract and seeking certain injunctive relief.

The superior court overruled a demurrer to the complaint, and the defendant, appellant, refusing to plead further, judgment was rendered upon demurrer in favor of appellee.

The only error assigned calls in question the ruling upon the demurrer. It appears from the complaint that the executive department of public works of the city, on September 18, 1893, entered into contract with the Sun Vapor Street Light Company, by which such company covenanted that it would furnish to said city a certain number of sun vapor street lights for a period of five years from said date at a certain price per light per year, payable in monthly installments, and the city covenanted to pay accordingly, and among other things the contract contained the following mutual covenants: "To each of the provisions, conditions and stipulations of this contract, the undersigned, each for itself, hereby covenants, agrees and binds itself, its successors and assigns." Upon the part of the city the contract is executed in the name of the city, by its board of public works, with the city seal affixed, and the contract is also signed by the mayor. It further appears that the appellee was duly appointed receiver of said light company, and as such he had secured the permission of the court appointing him to bring this suit. It is also shown that the monthly installment for which the suit is brought was due and

unpaid. The ground on which it was sought to defeat the action in the trial court and to reverse its judgment in this court is, that the contract sued on was and is absolutely void because made in violation of the statute. At the date of the contract the appropriations by the common council to the several executive departments of said city for the current expenses of the fiscal year had not been made.

The prior fiscal year had expired August 31, 1893. For that year the council had, on September 26, 1892, appropriated to the board of public works a certain sum for public light, and by said ordinance said appropriation continued and carried to October 1, 1893, unless the appropriation ordinance for the fiscal year ending August 31, 1894, was sooner passed by the council. The appropriation ordinance for the fiscal year ending August 31, 1894, was passed September 21, 1893, and carried an appropriation to said department for public light of $76,000 for said year. So far as appears by the complaint this appropriation was not more than sufficient to meet the expenses during the fiscal year for which the appropriation was made for public light of all kinds, including gas and electric light upon existing contracts then in force. Upon September 18, 1893, being the day and date upon which the contract sued on was entered into, there remained unexpended of the sum appropriated to said department for public lights for the fiscal year ending August 31, 1893, the sum of $15,000, which sum was sufficient only to meet the expense of lighting the city by gas, electricity and vapor light for and during the months of September and October, 1893. In other words, the complaint shows that upon the date of the execution of the contract, the appropriation to the department of public works was only sufficient

to pay upon existing contracts for the current and succeeding month, and even this sum was not available after October 1, because upon that date the appropriation by its terms lapsed.

Subsequent appropriations were made to the department of public works for public light as appears by the complaint, but at no time did the common council authorize the execution of said contract, or take any action to confirm or approve the same. In the last appropriation ordinance, being exhibit G of the complaint, there is an express provision in section 3 that the appropriation for vapor lights, by item 28, under heading "Department of Public Works," the provision is made that it is not to be taken or deemed as a ratification of any contract heretofore entered into by the department of public works of said city, which may not have been authorized by previous appropriations therefor. It is further shown that the board of public works, on December 19, 1894, notified appellee in writing that said city was not bound by said contract, that the same was illegal, and that it would not pay for any lights furnished under said contract by appellee after December 31, 1894.

The appellee, nevertheless, continued to furnish them for the month of January, 1895, and now seeks in the complaint to recover therefor upon said contract.

The board of public works, by the act commonly known as the city charter for said city, is an executive department of said city government, with certain powers conferred to contract on behalf of the city, subject to certain limitations therein prescribed. R. S. 1894, sections 3812-3819. Among these powers is the power: "To contract for the furnishing of gas, either natural or artificial, water, steam or electricity, light or power, to said city or the citizens thereof, by

any company or individual, and in such contract to fix the price to be charged for the same in such city, subject to ordinances of such city, in relation to consumption by private consumers," provided that such powers can only be exercised pursuant to an ordinance specifically directing the same. R. S. 1894, section 3830, top page 359. The board of public works assumed to act under this power in entering into the contract sued on. This power is subject to the limitations expressed in the statute already mentioned, wherein it is provided that: "The legislative authority of the city shall be vested in a common council." R. S. 1894, section 3780.

"All ordinances, orders, resolutions and motions for the government or regulation of such city, and all ordinances for the appropriation of money, shall originate in the common council. No appropriation shall be made for the payment of money, otherwise than by ordinance, specifying by items the amount thereof, and the department for which such appropriation shall be made." R. S. 1894, section 3789.

Sections 50, 51, 52 and 62 of the act read as follows:

"Sec. 50. It shall be the duty of each executive department, before the commencement of each fiscal year, to submit to the joint meeting of the heads of the departments and of the various boards hereinbefore provided for in section 45, an estimate of the amount of money required by their respective departments for the ensuing fiscal year, stating with as great particularity as possible each item thereof. The comptroller shall at the same time submit a statement or estimate of city expenditures for other purposes, for the ensuing year, over and above the moneys proposed to be used by various executive departments, giving with as great particularity as possible each item thereof. After such meeting, and reports and consultation, the

city comptroller shall thereupon proceed to revise such estimates for the ensuing year, and the comptroller shall then prepare a report to the mayor of the various estimated amounts required in said comptroller's opinion for each executive department, and for other city expenses, together with an estimate of the necessary per cent. of taxes to be levied. The mayor shall at the next meeting of the common council present such report with such recommendations as he may see fit. It shall be the duty of the committee of finance of said common council thereupon to prepare an ordinance fixing the rate of taxation for the ensuing year, and also an ordinance making appropriations by items for the use of the various executive departments and other city purposes for the ensuing year. Said ordinance may reduce any estimated item for any executive department, from the figure submitted in the report of the city comptroller, but shall not increase the same unless recommended by the mayor. Such appropriation ordinances shall thereafter be promptly acted upon by the common council. If at any time after the passage of such ordinance an emergency shall arise for further appropriations for the use of any department, as certified by such department, as hereinbefore provided, or other purposes during the year, such additional appropriations may be made on the recommendation of the comptroller by a two-thirds vote of the council.

"Sec. 51. No executive department, officer or employe thereof, shall have power to bind such city by any contract, agreement, or in any other way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose of such department, and all contracts and agreements, express or implied, and all obligations of any and

every sort, beyond such existing appropriations, are declared to be absolutely void.

"Sec. 52. Any city official who shall issue any bond, certificate or warrant for the payment of money which shall purport to be an obligation of such city, and be beyond the unexpended balance of any appropriation made for such purpose, or who shall attempt to bind such city by any contract, agreement, or in any other way, to any extent beyond the amount of money at the time already appropriated by ordinance for such purpose, and remaining at the time unexpended, shall be liable on his official bond to any person injured thereby, and shall be fined in any sum not more than one thousand dollars ($1,000), and imprisoned in the county jail not more than six months, either, or both.

"Sec. 62. All the expenses incurred or authorized by such board of public works shall be payable out of the general funds of such city appropriated to the use of such board and available for the particular purpose, except where this act specifically directs that the same is to be paid for by assessments against property holders." R. S. 1894, sections 3821, 3822, 3823, 3833, Acts 1891, p. 137.

The full meaning of the provisions already quoted will be better apprehended by considering in connection therewith the following portion of section 54:

"Sec. 54. It shall be the duty of the comptroller: * * * To keep separate accounts for each specific item or appropriation made by the council to each department, and require all warrants to state specifically against which of said items the warrant is drawn. Each account shall be accompanied by a statement in detail in separate columns of the several appropriations, the amount drawn on each appropriation, the

unpaid contracts charged against it, and the balance standing to the credit of the same. He shall not suffer any appropriation to be overdrawn or the appropriation for one item of expense to be drawn upon for any other purpose, or by any department other than that for which the appropriation was specifically made, except on transfers authorized by ordinances." R. S. 1894, section 3825.

It will be seen that by section 50 and those preceding it, the common council is the local legislative and governing body, has exclusive power to levy taxes and to appropriate the revenues and thereby authorize their disbursement.

By sections 51, 52 and 62 the power of the executive departments to bind the city by contract is limited to the revenues for which the levy for the ensuing fiscal year is made, and which has been appropriated to the several departments for the specific purposes by the council as it is advised the same is necessary.

It is conceded in the complaint and appellee's argument that there was no revenue appropriated and available for the specific purpose involved in the contract beyond what would be required to pay the installment on such contract for the current month and the ensuing month of October.

And yet it is contended by the learned counsel for appellee that such contract is not a violation of the statutory provision that: "No executive department, officer or employe thereof shall have power to bind such city by any contract, agreement, or in any way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose of such department, and all contracts and agreements, express or implied, and all obligations of any and every sort beyond such existing appropriations, are declared to be absolutely void."

The installment sued for here is that for the month of January, 1895, far beyond the amount appropriated at the time the contract was entered into. It is only attempted obligations beyond existing appropriations that the statute makes void. And if it has not done so then language cannot be employed strong enough to accomplish that manifest object and intent.

Counsel cite and rely on three cases in this court to uphold their contention that the contract is not in violation of the statutory provision quoted. The first is the *City of Valparasio* v. *Gardner*, 97 Ind. 1.

It was sought in that case to enjoin the letting of a contract to a water works company for supplying the city with water for a period of twenty years at an annual expense to the municipality of $6,000. It was alleged that the corporate indebtedness then exceeded 5 per centum of the assessed value of the taxable property of the city, and that there was no money in the treasury.

The ground on which it was sought to maintain the action was that the proposed contract would be in violation of Article 13 of the constitution, adopted March 14, 1881, which provides that: "No political or municipal corporation in this State shall ever become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding 2 *per centum* on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void."

It was held that this inhibition was against the creation of an indebtedness or the debt of the municipality beyond the limit therein prescribed. But it

was held that the compensation of the contractor was not a debt within the sense of this provision, until the service was performed and the contractor was entitled to be paid, and in that view it did not run the debt beyond the constitutional limit. The pivotal point on which the decision turned was the word "indebted," as used in the constitution. The next case cited is *Crowder* v. *Town of Sullivan*, 128 Ind. 486 (13 L. R. A. 647), which simply reaffirms the same principle. The next case is *Foland* v. *Town of Frankton*, 142 Ind. 546. That case simply reaffirmed and applied the same principle declared in the two previous cases. In this latter case, it was sought to enjoin the letting of a contract by the town by which it was to pay $300 a year for a certain number of street lights for a period of five years, and it was averred that no petition had been signed by a majority of the resident owners of the taxable real estate of said town to contract said debt for lighting the streets, or any debt. It was claimed that such a contract would be in violation of section 27 of the act of 1853, reading as follows: "No incorporated town under this act shall have power to borrow money or incur any debt or liability unless a majority of the resident owners of the taxable real estate of said town shall petition the board of trustees to contract such debt or loan." R. S. 1894 (R. S. 1881, section 3342).

It was justly held in the case last referred to that it was a debt or loan only that was prohibited without a petition, and following the two former cases that the agreement to pay for the lights to be furnished did not create a debt within the meaning of the section quoted.

But here we have a very different prohibitory provision to deal with.

The exclusive law making power of the State,

speaking of the powers of the executive departments of the city government of appellant, of which the board of public works is one, has said: "No executive department, officer or employe thereof shall have power to bind such city by contract, agreement, or in any way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose of such department, and all contracts and agreements, express or implied, and all obligations of any and every sort beyond such existing appropriations, are declared to be absolutely void."

Appellee's learned counsel gravely urge that this prohibition is against the creation of a debt or an indebtedness according to the definition given that term in the cases cited and does not prohibit the creation of other obligations. But if this court may fritter away the plain language of the statute in that way, it is poorly worth the while to have another law-making power called a legislature.

To do as counsel gravely urge us to do, would be to usurp the power, to both make and unmake laws. If the judiciary may do that, a legislature would be an appendage to government neither useful nor ornamental. The language quoted deprives the board of public works of the power to bind the city by any contract, agreement or in any way, and to any extent beyond the amount of money already appropriated by ordinance for the purpose of such department, and all contracts, express or implied, and all obligations of any and every sort beyond such existing appropriations are declared to be absolutely void. If language could be so framed as to make such a contract absolutely void, this language has certainly accomplished that result. If it has not, then it is because the English language is utterly incapable of conveying that idea to the understanding. But it is earnestly in-

sisted that this court, in construing the above lan-
guage, ought to presume that the legislature em-
ployed it with the full knowledge of the decisions in
the Valparaiso case and the Sullivan case, and that
they supposed from those decisions that the language
they employed, above quoted, would mean indebted-
ness in the sense ascribed to that term in those cases.
There would be much plausibility, and even force, in
the contention if the word debt or indebtedness had
been used in the provision now under consideration.
But no such word is used, but the language employed
is so broad and sweeping as to carry down obligations
of all kinds.

It may be conceded that the presumption arises
that the language in question was employed in view
of the holding in those cases.

But that concession militates against counsel's con-
tention. The extraordinary strength of the language
employed doubled, trebled and quadrupled as it is,
to avoid such a construction as is contended for,
seems to point with unerring certainty to the fact
that the legislature meant just what it has said.

Similar statutory regulations for city governments
are not new. Such statutory restrictions very much
like those now before us have been enacted in the
States of Minnesota, Illinois, Pennsylvania, Cali-
fornia, Ohio, Michigan and Oregon, and such statutes
have received by the courts of those states the same
construction we have placed upon the statute here in-
volved. *Kiichli* v. *City of Minneapolis* (Sup. Ct.
Minn.), 59 N. W. Rep. 1088; *Garrison* v. *Chicago and
Peoples Gas Light and Coke Co.*, 7 Biss. 480; *City of Su-
perior* v. *Norton* (U. S. Cir. Ct. of App.), 63 Fed. Rep.
357; *Bladen* v. *Philadelphia*, 60 Pa. St. 464; *City of
Philadelphia* v. *Flanigen*, 47 Pa. St. 21; *Jonas* v. *City
of Cincinnati*, 18 Ohio 318; *Wallace* v. *San Jose*, 29 Cal.

180; *San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641; *Niles Water Works* v. *Niles*, 59 Mich. 311; *Pullman* v. *Mayor N. Y.*, *etc.*, 49 Barb. 57.

It is contended by appellant that there are two lines of decisions on the question before us, one supporting appellant's contention and the other supporting appellee's contention. But we do not so understand the cases. The ones that are in point at all are against appellee's contention and support appellant's contention.

There are cases in other States, like the Indiana cases cited by appellee above mentioned, but we do not think they or the Indiana cases have any application to this case.

The learned counsel for appellee concede that there can be no enforcement of this contract until there is an appropriation of the revenues for that specific purpose, contending that whenever such appropriations are made the contract lays hold on them and their payment may be enforced by action. This is a concession that if no appropriation is ever made therefor, the contract can never be enforced. That amounts to a concession that when made it was not a contract. Because contracts when validly executed do not depend for their validity on the subsequent assent of one or both of the contracting parties. If validly made, it received the assent of both parties in its execution and may be enforced against either party when he is derelict without again obtaining his assent. I Pars. Cont. (5 ed.) 475; *Cartmel* v. *Newton*, 79 Ind. 1.

If the contract is as appellee's learned counsel concede, ineffective, it is because it is made in violation of the statute. Such a contract is absolutely void, and is as if it had never been made. *State Bank* v. *Coquillard*, 6 Ind. 232; *Cassaday* v. *American Ins. Co.*, 72 Ind. 95; *Davis* v. *Barger*, 57 Ind. 54; *Reynolds* v. *Steven-*

*son,* 4 Ind. 619; *Link* v. *Clemmens,* 7 Blackf. 479; *Pate* v. *Wright,* 30 Ind. 476; *Heller* v. *Crawford,* 37 Ind. 279; *Heavenridge* v. *Mondy,* 34 Ind. 28; *Case* v. *Johnson,* 91 Ind. 477; 15 Am. and Eng. Ency. of Law, sections 1102–1103.

If the contract had never been made, a subsequent appropriation could not have the effect of making it a contract; the contract being illegal was incapable of being subsequently ratified so as to make it binding without making it a new contract. *Henry* v. *Heeb,* 114 Ind. 275, and authorities there cited.

All persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation and of its officers to make the contract. 15 Am. and Eng. Ency. of Law, section 1100, and cases there cited; *Union School Tp.* v. *First Nat'l Bank,* 102 Ind. 464; *City of Detroit* v. *Robinson,* 38 Mich. 108; 2 Beach Pub. Corp., section 1228, note 5; *Borough of Milford* v. *Milford Water Co.,* 124 Pa. St. 610 (3 L. R. A. 122); 1 Dillon Munic. Corp., sections 447–8, 457; *Pine Civil Tp.* v. *Huber Mfg. Co.,* 83 Ind. 121.

We are, therefore, of the opinion that the complaint did not state facts sufficient to constitute a cause of action, and that the superior court erred in overruling the demurrer thereto.

The judgment is reversed and the cause remanded; with instructions to sustain the demurrer to the complaint.

Filed February 13, 1896.

NOTE.—On the question as to what constitutes an indebtedness within the restrictions on municipal debts, the authorities are presented in a note to *Beard* v. *Hopkinsville* (Ky.), 23 L. R. A. 402.