GREELEY et al. v. CITY OF EVANSVILLE
(two cases).

Nos. 7861, 7862.

Circuit Court of Appeals, Seventh Circuit.

June 10, 1942.

S. Ashley Guthrie and Wm. W. Miller, both of Chicago, Ill., and Paul H. Schmidt, of Evansville, Ind., for appellants.

Frank H. Hatfield, Joe S. Hatfield, Leo Warren, Louis L. Roberts, and E. H. Ireland, all of Evansville, Ind., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered July 24, 1941, upon a complaint containing three counts, each of which purported to state a separate cause of action. The judgment was for plaintiffs upon the first count and for defendant upon the second and third counts. Plaintiffs appealed from the judgment on counts two and three, and defendant cross-appealed from the judgment on count one. (We shall refer to the parties as "plaintiffs" and "defendant" as they were designated in the court below).

Plaintiffs are civil and sanitary engineers and their suit is to recover compensation for engineering services performed for defendant (a municipal corporation) in connection with the construction of a sewerage and sewage disposal system. The claim relied on in count one is for services rendered at the request of defendant's Mayor, preliminary to action by defendant's council in providing for a sewage disposal improvement. The claim relied on in count two is for services rendered in connection with a written contract entered into between plaintiffs and the defendant September 12, 1934. The claim relied on in count three is for additional services not required in the contract relied on in count two and alleged to have been rendered at the request of the defendant.

As different issues are presented by each of the three counts, it will be necessary to consider them separately. The case was tried to the court without a jury and there is little, if any, dispute concerning the facts. In fact, they were, in the main, stipulated at a pre-trial conference, and

the findings of fact as made by the court are predicated largely thereon. In its conclusions, the court merely found that plaintiffs were entitled to recover on count one, and denied recovery on counts two and three. There is, therefore, nothing in the record to indicate the issues the court regarded as material to the conclusions reached.

### Count I.

Plaintiffs were employed by verbal agreement in November, 1933, by defendant's Mayor to perform the preliminary engineering services, preparatory to an application to the Federal Public Works Administration (referred to herein as "P. W. A."), pursuant to the provisions of Chapter 61 of the Acts of the Special Session of the Indiana General Assembly, 1932. Burns Ann. Stat., 1933, 48-4301 et seq. There is no occasion to relate the details of such service inasmuch as it was stipulated that the amount sought to be recovered was the reasonable value therefor, and that plaintiffs were qualified engineers. In December, 1933, there was filed with the P. W. A. an application for loan and grant in the aggregate amount of $1,171,700. The amount sought was itemized and there was included an item of "preliminary expense, $6000." The application was signed by the Mayor and certain citizens designated as a "Citizens' Committee." The application was approved by the P. W. A. and a loan was tendered to defendant in an amount not exceeding that applied for.

On August 27, 1934, an ordinance was passed by defendant's council, approved by the Mayor, approving the agreement with the P. W. A., and authorizing the Mayor and City Clerk to execute the loan agreement. The loan thus obtained included the item for preliminary expenses mentioned heretofore.

Defendant contends there can be no recovery for such preliminary services because plaintiffs had no contract with the defendant; that there was no ordinance authorizing such employment, and that there were no funds on hand or authorized out of which payment could be made. Plaintiffs do not dispute but that the Mayor was without authority to engage their services, but contend that the services having been performed and ratified by the proper city officials, they are now entitled to recover.

Therefore, the question for decision is whether the proper city officials could ratify the informal agreement made by plaintiffs with the city's Mayor so as to obligate the city.

Defendant cites and relies upon numerous Indiana authorities in support of its contention that there can be no ratification. An examination of such authorities discloses they have little, if any, pertinency to the instant situation because, generally, recovery was sought upon a contract which the city was without authority to make and, therefore, void from its inception. Hamer v. City of Huntington, 215 Ind. 594, 21 N. E.2d 407; City of Indianapolis v. Wann, Receiver, 144 Ind. 175, 42 N.E. 901, 31 L.R.A. 743. As pointed out in the latter case, (page 185 of 144 Ind., 42 N.E. 901) not only was the contract made without authority, but it was declared void by statutory mandate. The case which furnishes defendant its strongest support is that of State ex rel. Keith et al., v. Common Council of Michigan City, et al., 138 Ind. 455, 37 N.E. 1041, wherein it was held that an unauthorized contract with the city's Mayor was void. The court, however, (page 463 of 138 Ind., page 1043 of 37 N.E.) said: "There is nothing in the record alleging that this contract was ever approved by the common council; so that, as it stands here, it derives its sole claim to be an agreement of binding force upon the city from the authority previously conferred upon the mayor to execute it. * * *" On the other hand, the doctrine of ratification has been recognized. In City of Logansport v. Dykeman, et al., 116 Ind. 15, on page 24, 17 N.E. 587, on page 592, the court said: "With all the diligence and laborious research of counsel, they have presented no authority which would support a holding that the contract, even though not regularly made in the beginning, had not been so ratified and adopted by the subsequent acquiescence and affirmative conduct of the common council as to authorize a recovery. * * *" See also Schipper v. City of Aurora, 121 Ind. 154, 22 N.E. 878, 6 L.R.A. 318; Bass Foundry & Machine Works v. Board of Commissioners of Parke County et al., 115 Ind. 234, 17 N.E. 593.

While it is not easy to reconcile all that has been said by the courts of Indiana relative to the instant discussion, we are of the opinion that a distinction has been made, insofar as the right of ratification is concerned, between those cases where the

agreement was void because of the want of statutory authority, (generally declared void by statute) and those cases where the authority to make the agreement was vested in the city, but where the agreement was not made in conformity with such authority. In other words, a city can not ratify what it was prohibited from doing in the first instance, but may ratify so as to obligate the city if the authority existed to do that which was subsequently ratified.

■ In the instant case there is no question but that the defendant had the authority to engage plaintiffs' services. By Section 48-4303, Burns Indiana Ann.Stat. 1933, the Board of Public Works was authorized to contract for and incur all necessary preliminary expenses in a matter such as the instant one. By section 48-4304, such items of expense may be certified to the City Controller and paid by the City Treasurer out of the general funds. It is not necessary that an appropriation has been made for such purpose—in fact, there appears to be no limit upon the authority of the city officials to incur or pay this preliminary expense.

The city being authorized to engage the services of the plaintiffs, and the latter having rendered the services necessary to enable the city to make application for a loan to the P. W. A., we are of the view that the city could ratify their employment and make itself liable therefor. By accepting the loan made upon an application in connection with which plaintiffs' services were essential, we think the city ratified the agreement relative to plaintiffs' employment. Furthermore, in making application for the loan, an item for preliminary expenses was included, which appears to have been accepted by defendant.

■ We are of the view there is no merit in defendant's contention that these preliminary services were included in the written contract between the parties under date of September 12, 1934. While the language in the contract, relied upon by defendant, may furnish colorable support for such an argument, any doubt in this respect is dispelled by plaintiffs' letter which accompanied the proposed contract and which specifically pointed out that "said preliminary services were not included in the contract as submitted, and that a separate bill of $1200 covering said preliminary services was enclosed."

We, therefore, are of the opinion that the judgment against defendant under count one was proper.

## Count II.

■ The second count is predicated upon plaintiffs' contention that defendant has not paid the compensation provided in the contract of September 12, 1934. This controversy, therefore, involves a construction of the contract which, so far as here material, is divided into three parts designated as "Description of the Project," "Services to be Rendered" and "Fees." Under the first part is described the project for improved sewerage and sewage disposal to be financed by a loan from the P. W. A. Under the second part the services to be rendered are classified as (1) preparation of detailed construction plans and specifications, and (2) supervision of construction; and under each of these is set forth in detail the services which the plaintiffs were to perform. The third part makes provision for the plaintiffs' compensation. Briefly, it is provided that they are to receive five per cent of the total contract cost of the work, which is to be paid as follows: Three per cent of the contract cost is to be paid within 30 days after bids are received, and if bids are not received within 90 days after plans and specifications are complete, plaintiffs are to be paid three per cent of the approved estimates as made by them. During the period of construction agreed upon between the contractors and the city, plaintiffs are to be paid two per cent of the contract cost of the work in approximately equal monthly installments.

Then follows the provision which furnishes the basis for plaintiffs' contention: "* * * If for any reason the Contractors shall fail to complete the work within the agreed contract time, then the Engineers are to be paid at the rate of Five Hundred ($500.00) Dollars per month * * *" Whether this provision is applicable is dependent upon the meaning of a provision contained in the itemized statement of services required of the plaintiffs under "Supervision of Construction" as follows: "(a) Maintaining one chief resident engineer in Evansville throughout the period agreed upon with the Contractors for the completion of the work, assumed in this case as eighteen (18) months."

While the contract makes no reference to divisions, but refers to the project in its entirety, the findings disclose that some time after its execution the project was divided into eleven divisions designated by letters A to K inclusive. Plaintiffs were required and did prepare the plans and specifications for each division. Construction contracts for the various divisions were let separately. Construction was begun July 1, 1935, on divisions A and B. Subsequently, contracts were let for the work on all other divisions, the period provided for completion of the various divisions varying from 30 days to 15 months. The court found as follows: "That all work on Divisions A to K was required to be completed and was completed before December 31, 1936, the end of a period of eighteen months after the beginning of the work. The work on Divisions L, M and N extended beyond such period and was completed on September 27, 1937. Divisions L, M, and N included work added to the project by the corporate authorities of the defendant after the work on all other divisions was under way. The plans and specifications for Divisions L and M were not approved by PWA until November 6, 1936, and Division N on January 19, 1937, after all other work on the project had been substantially completed."

If the question were raised, we would have some difficulty in ascertaining whether the contract covered the services rendered in connection with Divisions L, M and N. It was not until after Divisions A to K were nearly completed that defendant decided to construct Divisions L, M and N. Both parties, however, treat the project as including all the divisions and as coming within the terms of the contract. We shall do likewise.

In accordance with the provision of the contract concerning fees, plaintiffs have been paid five per cent of the contract cost of the work as to Divisions A to K inclusive. On Divisions L, M and N, they were paid three per cent of the contract cost. The controversy arose as to the amount of compensation to which plaintiffs were entitled for the supervision of construction of Divisions L, M, and N. Plaintiffs contend that under the clause quoted heretofore, they were entitled to be paid at the rate of $500 per month for eight months, while it is defendant's position they were only entitled to two per cent of the contract cost. The amount claimed and sued for was, therefore, $4,000. Plaintiffs, however, without prejudice to their rights, have accepted $856.97 (the amount conceded by the defendant as due them), so the amount involved on this appeal is the difference between those two amounts, together with interest.

Plaintiffs construe the contract to mean that the $500 clause is applicable for services rendered subsequent to the expiration of 18 months from the time construction on the project was commenced. As found by the court, this eighteen-month period expired December 31, 1936. On the other hand, it is contended by the defendant the eighteen-month provision applied to each construction contract, and that if each contract was completed within 18 months from the time of its commencement, the $500 clause was not effective. On this basis, it argues that although the construction work on Divisions L, M and N was all performed after December 31, 1936, it was completed prior to September 27, 1937, within 18 months from the time construction was commenced on these particular divisions, and that, therefore, defendant is not liable under the $500 clause.

We are required to settle the controversy without benefit of authority, or the reasoning which prompted the lower court to reach a conclusion favorable to the defendant. We have read and reread the contract, and we are unable to give it the interpretation sought by the defendant. It is not reasonable to believe the parties intended that plaintiffs should indefinitely supervise the construction of the project without any limitation upon the time when defendant was to let the contracts. Under the construction sought by the defendant, it would be immaterial when the contracts were let, provided they were each completed within 18 months from the time construction on each was commenced. It would mean that plaintiffs could have been required to supervise construction over a long number of years without being entitled to the benefit of the $500 clause. We realize this is a rather extreme hypothesis, but it illustrates what defendant's construction would lead to.

We think the language in dispute is readily susceptible of the interpretation that the parties intended the work was to be completed within 18 months from the time of inception and if not, plaintiffs were to have the benefit of the $500 clause. At any rate, that is a more reasonable inter-

pretation. That some importance was attached to the time element is illustrated by another clause concerning compensation. As already stated, three per cent of plaintiffs' fees were to be paid within 30 days after receiving bids, and then it is provided that if bids are not received within 90 days after plans and specifications are complete, plaintiffs are to be paid three per cent of the approved estimates made by them. Furthermore, in connection with the proposed contracts, plaintiffs sent to the defendant a letter dated September 8, 1934, which contained the following statement: "We propose to allow 18 months for the completion of all the work, which I think is ample. However, it is always possible that a contractor through bad management, bad luck or other causes may exceed the time limit. It is not fair that the Engineers should assume the cost of supervision of construction beyond the agreed time limit. * * *" There can be no doubt as to what plaintiffs intended with reference to the time element in the contract, and that the defendant had knowledge thereof. So far as the record discloses, the contract, as executed, was in the same form in which it was proposed. Defendant, at that time, raised no question concerning the eighteen-month time limit, or subsequently, until December of 1936, and then only in response to a letter from plaintiffs.

On December 15, 1936, plaintiffs addressed a letter to defendant which requested instructions with reference to supervision of construction on Divisions L, M and N. So far as material, the letter stated:

"It may be pertinent to call attention to the fact that our agreement with the City covering preparation of plans and specifications and supervision of construction stipulates that we are to receive two per cent (2%) of construction costs for supervision of construction during the period allowed contractors to complete their work and this period is assumed to be eighteen (18) months in the agreement. Actually the construction of the work originally contemplated has been completed in somewhat less than this time.

"Construction began July 1, 1935, hence the eighteen (18) months will terminate December 31, 1936. Our agreement further states that if for any reason the work is not completed within the contract time,

namely by January 1, 1937, that we are to receive compensation at the rate of $500 per month for a resident engineer and actual cost for any assistant engineers. Some of the work has not been completed within the contract time. However, all of the work which was originally contemplated has been completed within the eighteen (18) months assumed in our agreement. We are of the opinion that the percentage fee in our agreement, namely two percent (2%) for supervision of construction, is not applicable to the additional work now under consideration and therefore suggests that if our services are to be continued after December 31, 1936, that we be compensated on the basis as set forth in our agreement.

"Awaiting your advice and instructions."

On December 16, 1936, defendant replied to this letter and took issue with plaintiffs' interpretation of the contract, claiming they were employed as engineers for the completed system, which included Divisions L, M and N. It was contended that the interpretation of the contract placed upon it by the parties made it applicable to such divisions because plaintiffs had "without any different contract, drawn plans and specifications for the extensions, and attended, supervised and analyzed the bids and received payment for the same under the percentage clause of the contract." The letter concludes: "We are, therefore, reporting and notifying you that you will be expected and required to continue services in construction of divisions L, M and N under the terms of your said contract of employment."

Defendant attaches importance to this exchange of letters and argues that inasmuch as plaintiffs supervised the construction of Divisions L, M and N without any further agreement with defendant, they accepted the interpretation which defendant placed upon the contract. In our opinion there is little, if anything, in this correspondence of benefit to defendant's contention. In the first place, it will be noted that plaintiffs' position, as stated in their letter, insofar as the time element is concerned, is consistent with their letter of September 8, 1934, referred to heretofore; and defendant's position, inconsistent with that letter, is now stated for the first time. Of course, it may be said that plaintiffs, after knowledge of defendant's position with reference to the time element, con-

tinued with their employment. On the other hand, it is argued by the plaintiffs that they were obligated by the contract to continue with their services and that the only question raised by the correspondence was the amount of compensation which they were to receive. We think this is a tenable position, especially in view of the last paragraph of defendant's letter, above quoted. We are of the view that this correspondence throws little, if any, light upon the issue presented. The most that may be said for it is that both parties were apprised of the contention of the other with reference to the interpretation to be given the contract, and that both parties recognized plaintiffs were obligated to continue their services. Such services were performed and the issue then raised as to plaintiffs' compensation is that now in litigation.

In view of what we have said, it is our opinion that the court below erred in rendering judgment on this count for the defendant. There should have been judgment for the plaintiffs.

## Count III.

■ On June 25, 1937, plaintiffs were authorized and directed by defendant to prepare plans, specifications and estimates of cost for an additional proposed division of the sewer project referred to as "The Heidelbach and Diamond Avenue Sewers." It will be noted that this proposed division was not included in the original project although plaintiffs rely upon a provision in the contract of September 12, 1934 (the one involved in Count 2) as a basis for the claim stated in this count. Plaintiffs prepared the plans and specifications and delivered them to defendant's city engineer. There was included estimates showing the estimated cost of the proposed work to be $70,700. Defendant took no action on such plans and specifications because there were insufficient moneys available from funds advanced by the P. W. A. to pay the cost of construction, although there was sufficient money available to cover the compensation claimed by plaintiffs. The provision of the contract relied upon by the plaintiffs, is: "If for any reason bids are not received within ninety (90) days after plans and specifications are complete, then the Engineers are to be paid a total sum equal to three (3%) per cent of the approved estimates made by the Engineers subject to such amount being available from funds advanced by the Public Works Administration." Plaintiffs contend that the words "such amount" in the above quoted provision refer to "the total sum equal to three per cent" payable to plaintiffs and not to the entire estimated cost of construction. In other words, according to this contention, it was immaterial that the defendant was without P. W. A. funds to finance this project. In other words, it was sufficient if it had funds equal to the three per cent of the approved estimates as made by plaintiffs. We do not believe there is any merit in plaintiffs' position. To us, a reasonable interpretation of this provision requires available funds for the project. Furthermore, the three per cent was based upon "the approved estimates made by the engineers." Such estimates were not approved either by the defendant or the P. W. A. We do not agree with plaintiffs' contention that this language means the estimates as approved by them. The language contemplated, so we think, that the estimates made by them be approved either by the defendant or the P. W. A. and perhaps both, as a condition to their right to be compensated. We, therefore, conclude that the court properly rendered judgment on this count in favor of the defendant.

The judgments based upon counts one and three are affirmed and that based on count two is reversed, with directions to enter judgment thereon in favor of the plaintiffs.